Froessel, J. (dissenting).
I concur with Judge Burke for affirmance. Much has been said in this case that is completely irrelevant to the sole issue presented, namely: Did the Appellate Division of the First Department have the power to adopt rule 4 insofar as it provides that contingent fees equal to or less than the percentages fixed by it are “ fair and reasonable ”, whereas those in excess “ shall constitute the exaction of unreasonable and unconscionable compensation”? (Emphasis supplied.)
At the outset it may be noted that the very body charged by law (Judiciary Law, § 90) with disciplining attorneys has created by its own rule a presumption of guilt of unconscionable conduct, in the nature of a prior restraint, contrary to the express provisions of section 474 of the Judiciary Law. The challenged rule is not one of procedure. It interferes with the freedom of contract and impairs the obligation of existing contracts between attorneys and their clients, by arbitrarily fixing percentage fees, as to the amounts of which in many cases reasonable men might disagree.
We are not concerned here with what Edward I did with the courts and lawyers in 1292, for he assumed to regulate the lives of all his subjects. We live under an entirely different form of government today, under a written Constitution with its three separate branches of government (U. S. Const., arts. *124 I, II, III; N. Y. Const., arts. Ill, IV, VI), each operating in its own sphere. And a court’s first duty is to obey the law itself, no matter how well intentioned it may be in effecting a change.
From the earliest days, the Legislature of this State has exercised exclusive power with respect to attorneys’ fees. In 1848, all statutes regulating the fees of attorneys or “ restricting or controlling the right of a party to agree with an attorney * * * for his compensation ’ ’ were abolished. It was then provided that ‘ ‘ The measure of such compensation shall be left to the agreement, express or implied, of the parties ” (L. 1848, ch. 379, § 258). In 1876, the precise language of the first clause of what is now section 474 of the Judiciary Law was adopted, namely, “The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law ” (L. 1876, ch. 448, § 66).
In 1908, after an investigation into the abuses of contingent fees, the New York State Bar Association recommended an amendment of the law to allow a court to pass upon the reasonableness of contingent fee contracts in negligence cases and to reduce the attorney’s compensation when it was found excessive (31 New York State Bar Assn. Rep. 105-106, 136). This proposal was rejected by the Judiciary Committee of the Assembly, which thought it was an effort ‘ ‘ to invade a constitutional right ” between lawyer and client (32 New York State Bar Assn. Rep. 194). In 1938, as Judge Burke points out, a committee of the Association of the Bar recognized that “this deposit of authority must come from new legislation”. (Annual Reports of Association of Bar of City of New York [1938], p. 296.)
The case law under section 474 of the Judiciary Law clearly indicates that the function of the court is to determine whether the facts surrounding the agreement in any given case show that the attorney took advantage of the confidential relationship or perpetrated a fraud upon his client (Rodkinson v. Haecker, 248 N. Y. 480, 488-490; Ward v. Orsini, 243 N. Y. 123, 127-128; Matter of Reisfeld, 227 N. Y. 137, 140; Ransom v. Cutting, 188 N. Y. 447, 450; Morehouse v. Brooklyn Heights R. R. Co., 185 N. Y. 520, 526, reaffd. after new trial 123 App. Div. 680, affd. 195 N. Y. 537; Matter of Fitzsimons, 174 N. Y. 15, 23-24; Matter of Peters [Bachmann], 271 App. Div. 518, 523, *125 mod. on other grounds 296 N. Y. 974; Matter of Sasson, 231 App. Div. 524, 526; Matter of Liebergall, 189 App. Div. 681, 684; Matter of Lessig, 165 Misc. 706, 708 [in which the attorney claimed that an agreement was unconscionable to his disadvantage]).
In the absence of such showing, we have repeatedly held that under section 474 of the Judiciary Law the measure of an attorney’s compensation is fixed by his agreement with his client, unless otherwise provided by law (as, e.g., in Judiciary Law § 474 [as to infants]; Surrogate’s Court Act, § 231-a; Beal Property Law, §§ 122,122-a; General Corporation Law, §§ 63-68; Workmen’s Compensation Law, § 142, subd. 1), and that a court may not disregard that agreement and substitute its own judgment as to what it believes to be the appropriate compensation for the attorney’s services. Nevertheless, the majority is now approving a rule of the Appellate Division which in effect overrules our decisions.
There is neither constitutional nor statutory authority for the enactment of rule 4. While section 83 of the Judiciary Law provides that “ A majority of the justices of the appellate division in each department, by order of such majority, shall have power, from time to time, to adopt, amend or rescind any special rule for such department ”, this may only be done when “ not inconsistent with any statute or rule of civil practice ’ ’. By the same statute, the Justices of the Appellate Division are empowered to amend the Buies of Civil Practice only if “ not inconsistent with any Statute ”. When the Legislature declared that the compensation of an attorney for his services is governed by agreement, express or implied, which is not restrained by law, the Appellate Division had no right to enact a rule to the contrary, at the same time creating a presumption of guilt of unconscionable conduct because a lawyer may have contracted for a larger percentage (such as 35% or 40%) than the rule prescribes as reasonable for his services in a personal injury action.
A great deal is said in the prevailing opinion and in appellant’s brief about the desirability of rule 4, but, as I have already indicated, these considerations are completely irrelevant in our determination of the Appellate Division’s power. In McKinney’s Consolidated Laws of New York (Book 1, *126 Statutes, § 73, p. 110), “Avoidance of judicial legislation”, it is said (citing numerous cases): “ The Constitution of this state vests the legislative power in the Senate and Assembly [N. Y. Const., art. Ill, § 1], and that the courts may not divest or usurp this power has been announced so frequently and in such varying language as to defy complete repetition. Thus it is said that courts may not make, change, amend, or repeal a statute, since their function is to interpret, declare, and enforce the law; not to make it. No matter what disastrous consequences may result from following the expressed intent of the Legislature, the Judiciary cannot avoid its duty.”
Whether such usurpation of power is effected by rule or by the interpretation and construction of statutes, the result is the same. Section 474 and its predecessor have been on the statute books for well over a century and, despite efforts to secure an amendment thereof, the Legislature has thus far declined to make a change. This does not authorize the courts to usurp its power, for to “ supply omissions transcends the judicial function” (Iselin v. United States, 270 U. S. 245, 251). “A plea that a statute imposes inconvenience or hardship upon a litigant should be addressed to the Legislature; we may not usurp its functions by legislating judicially (United States v. Carotene Products Co., 304 U. S. 144) ” (People v. Friedman, 302 N. Y. 75, 79); and “ ‘ Nothing is more certain than that beneficent aims, however great or well directed, can never serve in lieu of constitutional power.’ (Carter v. Carter Coal Co., 298 U. S. 238, 291.) ” (Matter of Fink v. Cole, 302 N. Y. 216, 225.)
The judgment appealed from should be affirmed, without costs.
Chief Judge Conway and Judges Desmond, Dye and Fuld concur with Judge Van Voorhis; Judges Froessel and Burke dissent in separate opinions.
Judgment reversed, without costs, and the matter remitted to Special Term for further proceedings in accordance with the opinion herein.